UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARBURY ET AL.,

Plaintiffs,

v.

KARISH ET AL.,

Defendants.

Case No. 20-cv-10182

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

_____/

## ORDER AND OPINION DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#30]

### I. INTRODUCTION

On January 23, 2020, Plaintiffs Theodore Marbury ("Theodore"), Devonsalhine Williams ("Devonsalhine"), LaTanya Marbury ("LaTanya"), and Lavasha Marbury ("Lavasha"), initiated this action against City of Detroit police officers James Corsi and Ibrahim Karish. ECF No. 1. Plaintiffs filed their Complaint pursuant to 42 U.S.C. § 1983, alleging both Defendants committed seven counts of Fourth Amendment violations: (1) unlawful arrest of Theodore; (2) excessive force against Theodore; (3) unlawful detention of LaTanya; (4) excessive force against LaTanya; (5) unlawful detention of all Plaintiffs; (6) unlawful entry into Plaintiffs' home; and (7) unlawful seizure of property. *Id*.

1

Presently before the Court is Defendants' Motion for Summary Judgment, filed on August 23, 2021.  ECF No. 30, PageID.229.  Defendants assert qualified immunity as an affirmative defense to all counts in Plaintiffs' Complaint.  *Id*. at PageID.234.  On September 13, 2021, Plaintiffs submitted their Response in Opposition.  ECF No. 36.  Defendants did not submit a Reply brief.  The Court heard oral argument on January 5, 2022.  Additionally, the Court has reviewed the deposition testimony and the Defendants' body camera footage.  For the reasons discussed below, the Court will DENY IN PART and GRANT IN PART Defendants' Motion for Summary Judgment [#30].

## II. BACKGROUND

The evening of May 15, 2019, City of Detroit police officers Karish and Corsi received a radio dispatch about an alleged assault of a minor at 8087 Evergreen in Detroit, Michigan.  ECF No. 30, PageID.236.  The officers arrived at the Marbury home without a warrant at approximately 9:24 p.m.  ECF No. 31, PageID.252.

At the same time inside the Marbury residence, LaTanya was playing video games in her room next to the front door.  ECF No. 36-3, PageID.395.  Her father—Theodore Marbury—was watching local news in his pajamas upstairs.  ECF No. 36-5, PageID.421.  LaTanya's mother—Devonsalhine Williams—was

finishing a shower upstairs as well, while LaTanya's sister Lavasha Marbury watched television downstairs.  ECF No. 36-7, PageID.468.  Notably, Lavasha's parents confronted her earlier that day with a teacher on the phone because Lavasha skipped a high school mathematics class.  ECF No. 36-7, PageID.467.

Suddenly, LaTanya heard a knock at the front door.  ECF No. 36-3, PageID.395.  Flashlights began flashing in her bedroom window.  *Id*.  LaTanya answered the door for the Defendant officers.  *Id*.  When Karish asked her if someone called the police, LaTanya shook her head as if to say no.  ECF No. 36-1, PageID.386.  Karish then asked for LaTanya's father.  *Id*.  LaTanya called for her dad, who quickly moved to the front entrance.  *Id*. at PageID.396.

At the front door, Theodore asked Defendants if he could help them.  ECF No. 31, PageID.253; ECF No. 36-1, PageID.386.  Karish responded, "Is everything okay?"  *Id*.  Theodore repeated, "Can I help y'all?" before closing the door on Defendants.  *Id*.  "What a prick!" Corsi exclaimed after his partner spoke to Theodore.  ECF No. 36-2, PageID.388.  All parties agree that after this initial encounter, the officers returned to their police vehicle.

Defendants began flashing lights into the Plaintiffs' home from their vehicle. ECF No. 36-1, PageID.386.  After watching the home briefly, Defendants allegedly observed a young female attempt to leave the house before Theodore

pulled her back inside.   ECF No. 31, PageID.253; ECF No. 31-1, PageID.256.
Fearing an assault was taking place, the officers walked onto Plaintiffs' porch and
ordered Theodore to "get the fuck out of [our] way."   ECF No. 36-2, PageID.388.
Corsi yelled, "Open up the fucking door!" to the Plaintiffs inside.   *Id*.   "If you want
to be a fucking big man get out here," Corsi directed at Theodore.   *Id*.   "You are a
punk bitch is what you are."[1]   *Id*.   Theodore refused to open the door, citing his
Fourth Amendment protections.   ECF No. 36-5, PageID.424.

At this point, Devonsalhine finished her shower and put on some clothes.
ECF No. 36-4, PageID.408–409.   Hearing the commotion, she rushed downstairs
to speak with the officers herself.   *Id*.   Theodore and Devonsalhine discussed who
should speak to the officers as the Defendants observed them from the front door's
small window.   ECF No. 36-3, PageID.397.   "I'm going to talk to y'all, hold on"
Devonsalhine told the Defendants.   ECF No. 36-2, PageID.388.   When
Devonsalhine moved past Theodore, the officers ordered him to keep his hands off
her.   ECF No. 31, PageID.253; ECF No. 36-3, PageID.397.   LaTanya states that
her parents were pushing past each other to speak with the officers to deescalate
the situation.   ECF No. 36-3, PageID.398.

---

[1] The Court notes that both Defendants used profanities throughout their
interaction with the Marbury family, including Corsi calling Theodore a "dumb
motherfucker" prior to entry.   ECF No. 36-2, PageID.388.

Defendants purportedly "observed an adult female['s back] being pushed up against the door" and heard yelling from inside the home. ECF No. 31, PageID.253. "If you push [Devonsalhine] one more time I will make entry into this fucking house," Karish yelled at Theodore. ECF No. 36-1, PageID.386. Corsi elaborated, "You're hurting [Devonsalhine] so we can make entry" without a warrant. ECF No. 36-2, PageID.388.

"Do you want to kick [the door] in," Karish asked his partner. *Id*. "Yeah, fuck it, if you want to," Corsi replied. "He dragged the girl inside who wanted to talk to us." *Id*. Without immediate warning, the officers proceeded to kick open the door. ECF No. 31, PageID.253; ECF No. 36-3, PageID.398; ECF No. 36-4, PageID.409.

Defendants drew their guns and entered the Marbury home. ECF No. 36-3, PageID.398. "Get on the ground … get on the fucking ground!" both officers screamed at the Plaintiffs. ECF No. 36-2, PageID.388. The Marbury daughters shrieked in terror. *Id*. Seeing the weapons drawn, LaTanya bolted behind her father for cover. ECF No. 36-3, PageID.398. Lavasha ran up the stairs, fearing gunfire as well. ECF No. 36-7, PageID.470. After seeing the Marbury family, Defendants holstered their guns. ECF No. 36-5, PageID.427.

The parties exchanged verbal epithets before Defendants moved to detain Theodore.  ECF No. 36-4, PageID.409.  "Shut the fuck up" Corsi and Theodore said to one another during Theodore's detainment.  ECF No. 36-2, PageID.388. Karish grabbed Theodore's arm to handcuff him, pushing him against the wall. ECF No. 31-1, PageID.256; ECF No. 36-5, PageID.427; ECF No. 36-7, PageID.470.  Theodore claims he "let [the officer] handcuff me cause I didn't want no incident."  ECF No. 36-5, PageID.426.  LaTanya states that Karish tackled her father, pushing her down in the process into a couch.  ECF No. 36-3, PageID.398. "I was kind of balled up" LaTanya testified during her deposition, describing how the officers kept "pushing me trying to get to my daddy."  *Id*.  LaTanya claims that one officer kept elbowing her as she tried to move out of his way.  *Id*.

Defendants offer a different account: that one of Theodore's daughters tried leaping on Karish's back, which lead him to intercept her.  ECF No. 31, PageID.253.  LaTanya denies leaping on an officer's back, and her sister Lavasha sat on the stairs during her father's detainment.  ECF No. 36-3, PageID.398.

Once handcuffed, Defendants walked Theodore to their police vehicle.  ECF No. 36-5, PageID.426.  Devonsalhine, LaTanya, and Lavasha followed to see where the officers were taking him.  ECF No. 36-4, PageID.410.  Additional law enforcement personnel began arriving on the scene.  ECF No. 36-2, PageID.388. All plaintiffs except Theodore stayed on the front lawn talking to officers, before

returning into their home. *Id*. Defendants detained Theodore in the police vehicle for two hours until their supervisor—Sergeant William O'Brien—arrived and ordered his release without charges. ECF No. 36-5, PageID.429. Sergeant O'Brien later determined that no assault took place in the Marbury residence. ECF No. 36-6, PageID.439. Several months later, the Marbury family commenced this lawsuit.

## III. LEGAL STANDARD

### A. Summary Judgment

Federal Rule of Civil Procedure 56 permits parties to file a motion for summary judgment when a claim, counterclaim, or crossclaim is asserted against them. FED. R. CIV. P. 56(b). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is

so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

### B. Qualified Immunity

Defendants' Motion for Summary Judgment rests on their entitlement to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Public officials are immune from suit unless they commit: (1) a constitutional violation; and (2) that the constitutional right violated was "'clearly established'" when the incident occurred. *See Martin v. Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (quoting *Pearson*, 555 U.S. at 232). Plaintiffs must satisfy both prongs "for the case to go to a factfinder to decide if each officer's conduct in the particular circumstances violated a plaintiff's clearly established constitutional rights. If either prong is not satisfied, qualified immunity will shield the officer from civil damages." *Id*. (citing *Pearson*, 555 U.S. at 236). When the "legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not

the judge, must determine liability." *See McKenna v. Edgell*, 617 F.3d 432, 437 (6th Cir. 2010).

## IV. DISCUSSION

Defendants contend they are entitled to qualified immunity on each count Plaintiffs allege in their Complaint. ECF No. 30, PageID.234. In Count VI, all Plaintiffs allege Defendants unlawfully entered the Marbury home. Counts I, III, and V concern the Plaintiffs' unlawful arrest and detention claims. In Counts II and IV, Theodore and LaTanya respectively bring their excessive force claims. Finally, in Count VII, Theodore and Devonsalhine bring their unlawful seizure claim for property damage to their home. The Court analyzes how qualified immunity applies to each claim below.

### A. Warrantless Entry into the Home

Defendants assert qualified immunity on Plaintiffs' warrantless entry claim—Count VI in the Complaint.[2] ECF No. 30, PageID.246. Warrantless searches of the home are presumptively unconstitutional. *See Payton*, 445 U.S. at 586. However, exceptions do exist. *See Groh v. Ramirez*, 540 U.S. 551, 564

---

[2] As a threshold matter, the Court recognizes that all Plaintiffs residing in the Marbury home have standing to assert their Fourth Amendment claim against unlawful entry. *See Payton v. New York*, 445 U.S. 573, 584–85 (1980) (quoting U.S. Const. amend. IV.).

(2004) ("No reasonable officer could claim to be unaware of the basic rule, well established by our cases, that, absent consent or exigency, a warrantless search of the home is presumptively unconstitutional."). Relevant here is the "emergency aid exception" that authorizes officers to "enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *See Williams v. Maurer*, 9 F.4th 416, 431 (6th Cir. 2021) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)); *see also Michigan v. Fisher*, 558 U.S. 45, 47 (2009). The Government bears a "heavy burden" to satisfy this exception due to warrantless entries' presumptive unconstitutionality. *See United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005).

Courts assess the totality of circumstances when determining whether police face an emergency justifying a warrantless entry. *Williams*, 9 F.4th at 432. The "'emergency aid exception' does not depend on the officers' subjective intent or the seriousness of any crime they are investigating when the emergency arises." *Fisher*, 558 U.S. at 47 (quoting *Brigham City*, 547 U.S. at 404–05). Rather, "[i]t requires only an objectively reasonable basis for believing that a person within [the house] is in need of immediate aid[.]'" *Id.* (internal quotations omitted).

Both parties agree that Defendants entered Plaintiffs' home without a warrant or consent. Therefore, the constitutionality of Defendants entry turns on whether the officers had an objectively reasonable basis to believe someone in the

home was "seriously injured or threatened with such injury." *Brigham City*, 547 U.S. at 403.

The Court finds that "[w]hether exigent circumstances existed is a question of fact for the jury" because the underlying facts here are disputed. *See Crabbs v. Pitts*, 817 F. App'x 208, 213 (6th Cir. 2020) (quoting *Hancock v. Dodson*, 958 F.2d 1367, 1375 (6th Cir. 1992)). Defendants state that Theodore pulled a young woman into the home after she tried leaving. The officers allegedly feared an assault was occurring based on that observation, which created exigent circumstances for a warrantless entry. *See Brigham City*, 547 U.S. at 403 ("The need to preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.") (internal citation omitted). When Defendants reached the porch a second time, they also heard yelling from inside the Marbury residence, and saw Theodore putting his hands on Devonsalhine.

Plaintiffs' recitation of events indicates no threat of injury existed inside the Marbury home. Neither Devonsalhine nor Theodore saw anyone leave or attempt to leave the home. LaTanya and Lavasha both testified to staying in the home from the time Defendants arrived, until their father's detainment. Furthermore, Defendants' body camera footage does not show anyone trying to leave the home, or Theodore pulling anyone into the residence. In the light most favorable to

Plaintiffs', this factual dispute prevents the Court from finding exigent circumstances existed as a matter of law.

Supreme Court decisions concerning lawful warrantless entries in *Brigham City* and *Fisher* supports the Court's finding. In *Brigham City*, officers responded to "a loud party … at 3 o'clock in the morning" when they heard "an altercation occurring" from within the house. 547 U.S. at 406. Officers heard people yelling "stop, stop" and "get off me." *Id*. Since the yelling seemed to come from behind the house, "officers proceeded around back to investigate further." *Id*. Once behind the house, officers could see inside. *Id*. Officers observed a child with "fists clenched, [who] was being held back by several adults." *Id*. The child then broke free and struck "one of the adults in the face, sending the adult to the sink spitting blood." *Id*. As other adults tried restraining the child, officers made a warrantless entry. *Id*. The Supreme Court upheld the entry's constitutionality, reasoning that "the officers had an objectively reasonable basis for believing both that the injured adult might need help and that the violence in the [house] was just beginning." *Id*.

Likewise, in *Fisher*, officers "found a household in considerable chaos: a pickup truck in the driveway with its front smashed, damaged fenceposts along the side of the property, and three broken house windows, the glass still on the ground outside." 558 U.S. at 45–46. Law enforcement saw "blood on the hood of the

12

pickup and on clothes inside of it, as well as on one of the doors to the house." *Id*. at 46. Looking inside the home, officers witnessed a man with "a cut on his hand … screaming and throwing things." *Id*. An officer then made a warrantless entry. Citing *Brigham City*, the Supreme Court held the entry lawful because: (1) the officers "were responding to a report of a disturbance," (2) "when they arrived on the scene they encountered a tumultuous situation in the house," and (3) "the officers could see violent behavior inside." *Id*. at 48.

Defendants here did not encounter a situation amounting to the chaos supporting the lawful entries in *Brigham City* and *Fisher*. The Marbury home had no indications of a "tumultuous situation" occurring inside when Defendants first arrived. Unlike in *Fisher*, Defendants did not witness any blood on the scene. And unlike *Brigham City*, the officers did not hear any yelling when they first arrived. Only after Defendants began cursing at Theodore did the chaotic events unfold and the situation escalated.

Sequencing here matters. What distinguishes the lawful entries in *Brigham City* and *Fisher* from the present action is when the emergencies developed. A reasonable juror could determine that the undisputed facts of Theodore and Devonsalhine pushing past each other and the yelling that ensued occurred in response to the officers' behavior. Thus, *Brigham City* and *Fisher* illustrate that Defendants lacked an objectively reasonable basis to make a warrantless entry

based on the undisputed facts.  Accordingly, the Court cannot hold as a matter of law that the emergency aid exception applies.

Absent exigent circumstances, Defendants' warrantless entry is unconstitutional.  *See Payton*, 445 U.S. at 589–90 ("[A]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.").  Defendants claim their warrantless entry was objectively reasonable because of the alleged assault.  Should a jury agree that an assault occurred, then the emergency aid exception applies then the officers will be exonerated.

But Plaintiffs' recollections support a different outcome.  A reasonable jury could conclude that Theodore properly exercised his Fourth Amendment rights if Plaintiffs' facts are deemed true.  *See Kentucky v. King*, 563 U.S. 452, 469–70 (2011) ("When law enforcement officers who are not armed with a warrant knock on a door … the occupant has no obligation to open the door or to speak. … And even if an occupant chooses to open the door and speak with the officers, the occupant need not allow the officers to enter the premises and may refuse to answer questions at any time.").  The Court declines to find Defendants entitled to qualified immunity on Count VI of Plaintiffs' Complaint.

### B. Unlawful Arrest and Detainment

Next, Defendants assert qualified immunity as to Plaintiffs' unlawful arrest and detention claims—Counts I, III, and V—because the officers had probable cause to arrest and detain Theodore, to detain LaTanya, and to detain the entire Marbury family.  ECF No. 30, PageID.250.

The Fourth Amendment guarantees individuals the right to be free from "unreasonable seizures" and the right to be "secure in their persons."  U.S. Const. amend. IV.   Seizures of a person "can take the form of 'physical force' or a 'show of authority' that 'in some way restrain[s] the liberty' of the person."  *See Torres v. Madrid*, 141 S. Ct. 989, 1003 (2021) (quoting *Terry v. Ohio*, 392 U.S. 1, 17 (1968)).   "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."  *Terry*, 392 U.S. at 17.  Indeed, "the mere grasping or application of physical force with lawful authority" constitutes an arrest.  *See California v. Hodari D.*, 499 U.S. 621, 625 (1991).

But officers can make a warrantless seizure when "the exigencies of the situation" present a compelling law enforcement need.  *See King*, 563 U.S. at 460; *see also United States v. Saari*, 272 F. App'x 804, 809 (6th Cir. 2001) (holding "a constructive in-home arrest where neither a warrant is obtained nor exigent circumstances exists violates the Fourth Amendment.").   However, "[o]nce suspects are removed from the [home], the Fourth Amendment requires probable

cause for their seizure." *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 603 (6th Cir. 2012).

### 1. Count I and V – Theodore's Unlawful Arrest and Detainment

The Court does not find Defendants entitled to qualified immunity from suit on Theodore's § 1983 false arrest claim—Count I of Plaintiffs' Complaint. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Id*. "Generally, probable cause exists when the police have 'reasonably trustworthy information … sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000) (alteration in original) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). The arresting officers must "consider the totality of the circumstances" and cannot focus exclusively on evidence of guilt while ignoring exculpatory evidence when determining whether probable cause exists. *Id*. at 318. "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *See id*. at 315 (quoting *Pyles v. Raisor*, 60

F.3d 1211, 1215 (6th Cir. 1995)); *see also Wilson v. Morgan*, 477 F.3d 326, 334 (6th Cir. 2007).

For qualified immunity purposes, "it [is] 'clearly established that arrest without probable cause violates the Fourth Amendment.'" *See Ouza v. City of Dearborn Heights*, 969 F.3d 265, 279 (6th Cir. 2020) (quoting *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007)); *see also Welsh v. Wisconsin*, 466 U.S. 740, 749–50 (1984) ("[W]arrantless felony arrests in the home are prohibited by the Fourth Amendment, absent probable cause and exigent circumstances."). Just as officers need exigent circumstances to enter a home warrantless, the officers must also have probable cause to make an arrest once inside the home. *See Welsh*, 466 U.S. at 749.

The Court finds questions of fact exist as to whether Defendants had probable cause to arrest Theodore. Facts supporting Defendants' probable cause determination are disputed between the parties. Namely, whether Theodore pulled a young woman back into the Marbury home. In the light most favorable to Theodore, a reasonable juror can find that Defendants lacked exigent circumstances and probable cause to make a warrantless in-home arrest. A jury's resolution of the factual dispute must occur before the Defendants can be exonerated on Count I of Plaintiffs' Complaint.

Additionally, the undisputed fact that Theodore and Devonsalhine were pushing past each other is insufficient to establish probable cause as a matter of law.  *Cf. Gardenhire*, 205 F.3d at 315 ("Probable cause determinations involve an examination of all facts and circumstances within an officer's knowledge at the time of an arrest.") (quoting *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999)).  Without exigent circumstances and probable cause, Theodore's arrest violated the Fourth Amendment.  *See King*, 563 U.S. at 460.  And if his arrest violates the Fourth Amendment, then Theodore's subsequent detainment in the Defendants' police vehicle was also unconstitutional.  *See Marcilis*, 693 F.3d at 603.  Accordingly, the Court declines to grant Defendants' qualified immunity from suit on Counts I and V of Plaintiffs' Complaint as applied to Theodore.

### 2.  Count III – LaTanya Marbury's Unlawful Detainment

The Court finds the undisputed facts do not support LaTanya's claim of unlawful detainment.  Like an arrest, "an investigatory detention is a seizure that is subject to Fourth Amendment scrutiny."  *See United States v. Saari*, 272 F. App'x 804, 809 (6th Cir. 2001).  But the undisputed facts do not demonstrate that Defendants seized LaTanya.  At oral argument, Plaintiffs' counsel stated that Defendants only arrested Theodore.  LaTanya's deposition testimony does not demonstrate that Defendants seized her either.  To the extent that officers applied

force against LaTanya, the Court finds her claim better characterized as one alleging excessive force.  In the light most favorable to Plaintiffs' the Court finds that Defendants are entitled to qualified immunity on Count III in Plaintiffs' Complaint.

### 3.  Count V – Marbury Family's Unlawful Detainment

Similarly, the Court finds Defendants partially entitled to qualified immunity on Count V of Plaintiffs' Complaint—unlawful detention of the whole Marbury family, except Theodore.  Defendants did not seize Lavasha and Devonsalhine. After Defendants walked Theodore outside in handcuffs, the Marbury family followed to see where the officers were taking him.  While outside, the family spoke with officers about the situation before returning inside willingly.  The record fails to present a genuine issue of material fact supporting Lavasha and Devonsalhine's alleged  unlawful detainment.  The Court will therefore grant the Defendants qualified immunity on Count V of Plaintiffs' Complaint.

### C. Excessive Force

Defendants also seek qualified immunity from Counts II and IV in Plaintiffs' Complaint—the claims that Defendants applied excessive force against Theodore and LaTanya.  It is clearly established in the Sixth Circuit that people not resisting

arrest have a right to be free from gratuitous violence. *See Miller v. Sanilac Cty.*, 606 F.3d 240, 252 (6th Cir. 2010). Deciding whether an officer's use of force amounts to gratuitous violence requires the Court to apply an objective reasonable use of force standard. *See Barton v. Martin*, 949 F.3d 938, 953 (6th Cir. 2020); *see also Smith v. Stoneburner*, 716 F.3d 926, 933 (6th Cir. 2013) ("A police officer uses excessive force in arresting a subject if his actions are objectively unreasonable given the nature of the crime and the risks posed by the suspect's actions.") (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)). An officer's reasonable use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396–97. Courts must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *See Goodwin v. City of Painesville*, 781 F.3d 314, 321 (6th Cir. 2015) (quoting *Graham*, 490 U.S. at 396).

Three non-exhaustive factors guide the Court's analysis of whether an officer used reasonable force: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others, and" (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *See Goodwin*, 781 F.3d at 321 (citing *Shreve v. Jessamine Cnty. Fiscal Court*, 453

F.3d 681, 687 (6th Cir. 2006)).   Under the totality of the circumstances, the Court

decides whether the force used justified the seizure.   *Id*.

### 1.   Count II – Theodore's Excessive Force Claim

The *Graham* factors lead the Court to decline granting Defendants' qualified

immunity on Count II of Plaintiffs' Complaint.   First, the severity of Theodore's

alleged crime weighs in Defendants' favor.   The officers here responded to a

domestic violence call that claimed Theodore physically abused his daughter.   A

reasonable jury could conclude that a father assaulting his daughter is a violent

crime.    Although Sergeant O'Brien later determined no assault occurred,

Defendants did not know that during their forced entry.   Because the Court must

look at an officer's use of force from their "perspective of a reasonable officer on

the scene[,]" the Court finds the first *Graham* factor supports the Defendants.   490

U.S. at 396.

The second and third *Graham* factors weigh against the Defendants.   Body

camera footage does not depict Theodore threatening the officers with violence.

Nor does the footage show Theodore actively resisting arrest.   Moreover, Theodore

denies resisting arrest, instead stating that he allowed Defendants to handcuff him.

Other members of the Marbury family testified to that effect as well.   In the light

most favorable to Theodore, a reasonable jury could conclude that Defendants use

of force was objectively unreasonable.  The *Graham* factors call for minimal, if any, force to be exerted in Theodore's situation.  Since the evidence presents an issue of fact for the jury, the Court concludes that the Defendants are not entitled to qualified immunity  on Count II of Plaintiffs' Complaint—excessive force against Theodore.

### 2.  Count IV – LaTanya's Excessive Force Claim

LaTanya presents a viable excessive force claim as well.  The first *Graham* factor—severity of the crime—supports LaTanya's claim when viewed in the light most favorable to her.  Although Defendants allege LaTanya jumped on Karish's back, all Plaintiffs deny that happened.  Instead, Plaintiffs' testimony depicts Defendants pushing LaTanya into a couch and elbowing her, after she hid behind her father.  As such, the first *Graham* factor favors LaTanya.

Like Theodore, the second and third *Graham* factors favor LaTanya also. Plaintiffs' testimony does not illustrate LaTanya posing an immediate threat to Defendants.  In the Sixth Circuit, acts of physical and verbal resistance to law enforcement can justify reasonable force in response.  *See, e.g.*, *Goodwin*, 781 F.3d at 323 ("[A]ctive resistance can take the form of 'verbal hostility' or a 'deliberate act of defiance.'"); *Eldridge v. City of Warren*, 533 F. App'x 529, 533–34 (6th Cir. 2013) ("[A]n officer's use of force was justifiable because it was in response to

active resistance[.]").   But in the light most favorable to LaTanya, she was not resisting Defendants' commands.   Likewise, LaTanya did not pose a threat to the officers either. The pushing and elbowing LaTanya experienced can lead a reasonable juror to find she was subjected to gratuitous violence in violation of the Fourth Amendment. Therefore, the Court finds Defendants are not entitled to qualified immunity on Count IV of Plaintiffs' Complaint.

Taken collectively, Defendants conduct towards Theodore and LaTanya is not clearly or objectively reasonable as to shield them from liability under qualified immunity.   The facts concerning Defendants use of force on Plaintiffs is more appropriately left for the jury to resolve.   Accordingly, Defendants are not entitled to qualified immunity from Plaintiffs' excessive force claims.

### D. Unlawful Seizure – Count VII

Defendants next claim immunity from damages for the Marbury's front door being kicked open—Count VII of Plaintiffs' Complaint.  As the Court discussed *supra*, "it is 'clearly established' law that 'the fourth amendment forbids the unannounced forcible entry of a dwelling in the absence of exigent circumstances.'"  *Hall v. Shipley*, 932 F.2d 1147, 1151 (6th Cir. 1991) (citing *United States v. Francis*, 646 F.2d 251, 257 (6th Cir. 1981)).  Like Defendants other requests for qualified immunity, whether exigent circumstances supported a

warrantless entry into the Marbury home must be determined.  A jury must resolve the factual disputes.  The Court will deny the defendants qualified immunity as to Count VII, Plaintiffs' unlawful seizure of property claim.

## V. Conclusion

For the reasons discussed herein, the Court will DENY IN PART and GRANT IN PART Defendants' Motion for Summary Judgment [#30].

The Court will DENY Defendants' Motion for Summary Judgment seeking qualified immunity on Count I, II, IV, VI, and VII of Plaintiffs' Complaint.

The Court will GRANT Defendants' Motion for Summary Judgment seeking qualified immunity on Count III of Plaintiffs' Complaint.

The Court will GRANT IN PART Defendants' Motion for Summary Judgment seeking qualified immunity on Count V of Plaintiffs' Complaint, except as applied to Theodore Marbury.

**IT IS SO ORDERED.**

Dated:  January 11, 2022          /s/ Gershwin A. Drain
                                  GERSHWIN A. DRAIN
                                  UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
January 11, 2022, by electronic and/or ordinary mail.
<u>/s/ Teresa McGovern</u>
Case Manager